Filed 5/17/20  In re N.C. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| IN RE N.C., <br><br> A Person Coming Under The Juvenile Court Law. <br> ――――――――――――――――― <br><br> SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> S.G., <br><br>    Defendant and Appellant. | 2d Juv. No. B309222 <br> (Super. Ct. No. 19JV00451) <br> (Santa Barbara County) |

S.G. (mother) appeals the juvenile court's order terminating parental rights to her minor child N.C. with a

permanent plan of adoption. (Welf. & Inst. Code,[1] § 366.26.) Mother contends the court and Santa Barbara County Child Welfare Services (CWS) failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C.S. § 1901 et seq.). We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and R.C. (father)[2] are the natural parents of N.C. born in January 2017. On October 30, 2019, CWS filed a dependency petition as to N.C. alleging failure to protect (§ 300, subd. (b)). The petition alleged among other things that on October 28, N.C. had been found alone at a fast food restaurant. That same date, father tested positive for amphetamines, methamphetamines, and opiates. Mother also admitted recent methamphetamine use and both parents had significant drug-related criminal histories.

In its report for the October 31, 2019 detention hearing, CWS stated that the father had told the social worker he may have "Chumash [ancestry] down the line." The day of the hearing, father filed an ICWA-030 Parental Notification of Indian Status form stating that he "may have Indian ancestry" through the "Coastal Chumash" tribe. Mother denied any Native American ancestry. The juvenile court found that ICWA may apply. N.C. was ordered detained in foster care and the matter was set for a combined jurisdiction and disposition hearing.

In its December 2019 jurisdiction and disposition report, CWS recommended that both parents be offered reunification services. The social worker also reported that she had spoken to

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this writ proceeding.

the paternal grandmother (C.D.) about N.C.'s possible Native American ancestry.  C.D. told the social worker that "her cousins[s] are Coastal Chumash; however, she does not [k]now if her [*sic*] or her siblings are registered with the tribe."  At the conclusion of the combined jurisdiction and disposition hearing, the court placed N.C. with C.D. and awarded both parties reunification services and monitored visitation.

In a June 2020 six-month status review report, CWS recommended that reunification services be terminated and the matter be set for a section 366.26 hearing.  CWS reported that neither parent had participated in their case plans or visited N.C.  CWS also requested a finding that the ICWA did not apply.  CWS noted that neither parent had "responded to [CWS's] efforts to contact them by telephone or certified mail to provide ancestral information" and that father had said he may have Native American ancestry through the "Chumash Coastal Band," which is not a federally-recognized tribe.  At the conclusion of the six-month review hearing, the court terminated reunification services and set the matter for a section 366.26 hearing.

On July 30, 2020, CWS sent ICWA notices for the section 366.26 hearing to the Bureau of Indian Affairs (BIA), the Santa Ynez Band of Chumash Indians, the non-federally recognized Coastal Band of the Chumash Nation, and the Secretary of the Interior.  The notice identified C.D. as the paternal grandmother but misspelled her surname.  On August 13, 2020, the Santa Ynez Band of Chumash Indians sent a response stating that N.C. was not a member of the tribe and was not eligible for enrollment.  The notice sent to the Coastal Band of the Chumash Nation was returned as undeliverable.

At the initial section 366.26 hearing, the court found that ICWA did not apply.  At the conclusion of the contested section

366.26 hearing, the court terminated parental rights to N.C. with a permanent plan of adoption.

## DISCUSSION

In her sole claim on appeal, mother contends the juvenile court and CWS failed to comply with the inquiry requirements of ICWA.  We conclude otherwise.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah. W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[ ] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)  ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C.S. § 1903 (4), § 224.1, subds. (a) & (b).)

The juvenile court and child services agencies have an affirmative and continuing duty under ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child.  (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7-8.)  The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq.), California statutes, and rules of court.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 290-291.)

The child services agencies' initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the

4

child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ *Id.*, subd. (c).) Part of the initial inquiry also includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court,[3] rule 5.481(a)(2)(C).)

When information is provided "suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," there is reason to believe that an Indian child is involved in a proceeding, and further inquiry is required. (§ 224.2, subd. (e)(1); *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.) Further inquiry includes interviewing parents and extended family members to obtain information such as the names of the child's "biological parents, grandparents, and great-grandparents, . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C); see also § 224.2, subd. (e)(2)(A); rule 5.481(a)(4)(A).) The agency engaging in further inquiry should also contact the Bureau of Indian Affairs, the State Department of Social Services, and any tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. (§ 224.2, subds. (e)(2)(B) & (e)(2)(C); rule 5.481(a)(4)(B) & (C).) If the court or the child services agency has

---

[3] Subsequent rule references are to the California Rules of Court.

5

reason to know that the child is an Indian child under ICWA, then the relevant tribes must be given notice of the proceedings. (25 U.S.C.S. § 1912(a); § 224.3, subd. (a).)

"Where, as here, the juvenile court finds ICWA does not apply to a child, '[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry.' [Citations.] 'We review a court's ICWA findings for substantial evidence. [Citations.] "We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance."' [Citation.] The appellant '"has the burden to show that the evidence was not sufficient to support the findings and orders."' [Citation.]" (*In re J.S.* (2021) 62 Cal.App.5th 678, 688.)

We agree with CWS that a sufficient ICWA inquiry was conducted in this case. Father claimed Native American ancestry through the "Coastal Chumash" tribe. Moreover, father's mother C.D. verified that father's claimed ancestry was through this tribe. As mother concedes in her opening brief, the Coastal Chumash tribe (Coastal Band of the Chumash Nation) is not a federally-recognized tribe. Accordingly, ICWA did not apply. (See *In re K.P.* (2009) 175 Cal.App.4th 1, 5-6; *In re John V.* (1992) 5 Cal.App.4th 1201, 1216-1217.)

Mother contends the social worker could not reasonably conclude that father and C.D.'s reference the "Coastal Chumash" tribe was intended as a reference to the Coastal Band of the Chumash Nation. We are not persuaded. In the ICWA matrix included in CWS's six-month status review report, the social worker characterized father as referring to "the Coastal Chumash Band." Neither parent objected to this characterization.

Moreover, mother does not identify any federally-recognized tribe with a similar name. Under the circumstances, the social worker reasonably concluded that father was claiming Native American ancestry through the Coastal Band of the Chumash Nation, such that ICWA did not apply.

*In re T.G.*, *supra*, 58 Cal.App.5th 275, which mother cites in support of her claim, is inapposite. In that case, the mother filed an ICWA-020 form stating her belief that she may have Cherokee ancestry on her maternal side and possible Native American ancestry through her paternal grandfather. (*Id.* at p. 292.) The mother did not claim, as father and C.D. did here, that her Native American ancestry was through a non-federally recognized Indian tribe. Because father and C.D.'s statements did not give CWS reason to believe that N.C. was an Indian child the court did not err finding that ICWA did not apply.

**DISPOSITION**

The judgment (order terminating parental rights) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P.J.

TANGEMAN, J.

7

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Senior Deputy County Counsel, for Plaintiff and Respondent.